```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/3/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SKY MARLENE CAMACHO,

                        **Plaintiff,**

       -against-

673 J.R.V. CORP d/b/a DIAMOND CLUB, et al.,

                        **Defendants.**

-----------------------------------------------------------------X

22-CV-07107 (SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

       This case raises a question that has been addressed by dozens of courts already: when, as a matter of law, is an exotic dancer, who dances at clubs and gets paid by tips, an independent contractor? Sky Marlene Camacho ("Plaintiff") was a dancer at Defendants' establishment, Diamond Club. She brought claims for wage violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Defendants move for summary judgment, arguing that the undisputed facts establish that she was an independent contractor. Defendants' motion is DENIED.

**FACTUAL BACKGROUND**

       The following facts, drawn from the admissible materials submitted by the parties, are undisputed, unless otherwise stated.[1] Diamond Club (the "Club") is located in New York and is an adult entertainment club operated by 673 J.R.V. Corp. Defs. 56.1(a), ¶ 1. The Club has

---

[1] Defendants submitted a Local Civil Rule 56.1(a) Statement of Undisputed Facts, to which the Plaintiff responded, pursuant to Local Civil Rule 56.1(b). See ECF Nos. 57, 61. Defendants thereafter submitted a Rebuttal to Plaintiff's Response, ECF No. 67, which is not provided for in the Rules. Unless otherwise stated, citations to "Defs. 56.1(a)" incorporate only Plaintiff's responses. Plaintiff also submitted a Local Civil Rule 56.1(b) Counterstatement, to which the Defendants responded. See ECF Nos. 62, 66. Citations to "Pl. 56.1(b)" incorporate Defendants' responses.

between six to 12 employees on payroll, including managers, assistant managers, bar backs, and bartenders. Pl. 56.1(b), ¶ 6. Peter Forchetti, the owner of the Club, paid the bills, made repairs, and handled payroll for the Club. Id. ¶ 22. Plaintiff did not contribute to the Club's maintenance. Id. ¶ 23. The Club engaged a promoter to create promotional materials that contained images of the dancers. Id. ¶¶ 20-21.

Plaintiff began dancing at the Club in June 2021. Defs. 56.1(a), ¶ 4. Plaintiff did not audition or apply for her role at the Club. Id. ¶ 5. She was permitted to dance because of her experience, skill, and ability. Id. As part of her role at the Club, Plaintiff did not have to attend any meetings. Id. ¶ 17. Like all other dancers, Plaintiff was not prohibited from dancing at other clubs while dancing at the Club. Id. ¶ 18.

Plaintiff danced three to five days per week at the Club. Pl. 56.1(b), ¶ 7. Dancers did not have a schedule but instead made their own. Defs. 56.1(a), ¶ 9. Plaintiff did not have to sign in on arrival or sign out at the end of the night, and there are no records of the days or hours that Plaintiff worked at the Club. Id. ¶¶ 12, 13. Plaintiff did not have to inform anyone whether she would be dancing on a particular night, and Plaintiff was allowed to leave the Club at any time, though she chose to never leave before the Club closed for the night. Id. ¶¶ 8, 11. The parties dispute whether there was a scheduled start time *if* Plaintiff intended to dance on a given night. Id. ¶ 7. The parties agree, however, that the Plaintiff could not appear at the Club for extended periods of time without being questioned. Id. ¶ 10.

On occasion, the Club managers or promoters would ask Plaintiff to dance for specific clients. Pl. 56.1(b), ¶ 8. At other times, and on days she did not ordinarily dance at the Club, Plaintiff would come to the Club to dance for a specific customer. Defs. 56.1(a), ¶ 14. The parties

appear to agree that Plaintiff would be penalized if she did not dance on stage at an appointed time, but dispute whether there was a required amount of dancing time. Pl. 56.1(b), ¶¶ 9, 10.

The parties dispute whether there were any rules regarding what the Plaintiff had to wear at the Club. Defs. 56.1(a), ¶ 22. They appear to agree that the House Mom had to approve a dancer's makeup and shoes, and that she could require Plaintiff to wear pasties for certain outfits. Pl. 56.1(b), ¶¶ 12, 13. The parties agree that the Plaintiff could purchase outfits from the House Mom or have her makeup done at the Club but that this was not required. Defs. 56.1(a), ¶¶ 23, 24. Plaintiff used her own makeup approximately half the time. Id. ¶ 24.

Plaintiff was paid solely from client tips. Id. ¶ 19. She paid the House Mom at least $10 each night that she danced, and the house fee would vary depending on when a dancer arrived at the Club. Pl. 56.1(b), ¶¶ 3, 11. The House Mom gave a portion of those fees to the Club. Id. ¶ 2. Defendants did not issue Plaintiff a W-2 or 1099 tax form. Id. ¶ 15; Defs. 56.1(a), ¶ 21.

## DISCUSSION

### I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing that no genuine issue of material fact exists. Id. at 256-57; see Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."

Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citing Celotex, 477 U.S. at 322-23).

To survive a motion for summary judgment, the non-moving party "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks omitted). In ruling on a motion for summary judgment, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). "[T]he mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial." Mitsui Marine & Fire Ins. Co. v. China Airlines, Ltd., 101 F. Supp. 2d 216, 219 (S.D.N.Y. 2000). At summary judgment, the Court's role "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986). Ultimately, "the [Court's] task is material issue spotting, not material issue determining." Matter of Verplanck Fire Dist., 687 F. Supp. 3d 382, 389 (S.D.N.Y. 2023).

**II.     Independent Contractor or Employee**

Defendants seek summary judgment because they believe that there are no facts that would allow a reasonable jury to find that Plaintiff was an employee of the Club. Whether a party is an employee or an independent contractor is a question of law that can be decided on summary judgment based on undisputed material facts. Saleem v. Corp. Transp. Grp., 854 F.3d 131 (2d Cir. 2017) (affirming district court summary judgment decision finding that plaintiffs are independent contractors as a matter of law). Accordingly, the Court considers whether, based on the undisputed facts, no jury could find that Plaintiff was an employee of the Club.

4

**A. Fair Labor Standards Act**

The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'" Saleem, 854 F.3d at 140 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008)) (cleaned up).

The "economic reality" test guides the Court in determining Plaintiff's status as either an employee or an independent contractor under the FLSA. Saleem, 854 F.3d at 139. The factors for the economic reality test are:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

Barfield, 537 F.3d at 142. "No one of these factors is dispositive; rather, the test is based on a totality of the circumstances." Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-59 (2d Cir. 1988) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).

"Significantly, nearly without exception, courts that have addressed whether exotic dancers are employees under the FLSA have found an employment relationship and required the nightclub to pay its dancers a minimum wage." Black v. 7714 Ent., Corp., No. 21-cv-4829 (MKB)(TAM), 2022 WL 4229260, at *6 (E.D.N.Y. July 29, 2022), report and recommendation adopted, 2022 WL 3643969 (E.D.N.Y. Aug. 24, 2022) (internal quotation marks omitted). See also Kimbrel v. DEA Corp., No. 3:14-cv-161 (TAV)(CCS), 2016 WL 7799340, at *6 (E.D. Tenn. Aug. 2, 2016) (collecting cases).

### 1. Degree of Control (Factor One)

Generally, an employer "does not need to look over his workers' shoulder every day to exercise control." Brock, 840 F.2d at 1060. "To assess the degree of control that the defendants exercised over [plaintiff's] work, the Court considers whether the defendant was the ultimate decision maker on the main conditions of [the plaintiff's] work, including schedule, worker responsibilities, and compensation." Sue v. CE Sec. LLC, No. 21-cv-57 (AMD)(RML), 2024 WL 1308405, at *7 (E.D.N.Y. Mar. 27, 2024).

Substantial case law has developed over what constitutes the requisite degree of control over an exotic dancer for classification as an employee or independent contractor under the FLSA and state law.[2] See Hart v. Rick's Cabaret Intern., Inc., 967 F. Supp. 2d 901 (S.D.N.Y. 2013) (finding control where defendant's guidelines were extensively detailed regarding dancers behavior, schedule, check-in and check-out procedures, fee ranges, appearance and dress with strict dress code, method and manner of performances, and threats of warning, fines, suspension, or termination for failure to comply with the guidelines); Black, 2022 WL 4229260, *6 (finding control where plaintiff "was not permitted to and did not use discretion or independent judgment in performing any significant duties," "was closely and strictly supervised by her manager," "had to follow strict guidelines," "directed to dance on stage and was fired for not following her manager's directions," and "required to wear lingerie or bikinis to work as well as high heels with six-inch or greater heels." (internal quotation marks omitted)); Haile v. 566 Nostrand Ave. Inc., No. 20-cv-2842 (LDH)(CLP), 2024 WL 1345654, at *2 (E.D.N.Y. Mar. 29, 2024)

---

[2] In Defendants' moving brief, there is no reference to this District's seminal exotic dancer decision in Hart v. Rick's Cabaret Intern., Inc., 967 F. Supp. 2d 901 (S.D.N.Y. 2013), or the extensive case law across the country related to the classification of exotic dancers. Instead, only after Plaintiff raised this obvious gap did Defendants discuss Hart in their reply. Defendants argue that the Hart decision is over a decade old and "entirely distinguishable in virtually every respect from this case." Reply Br. at 12-13. Defendants' argument is not persuasive.

(collecting cases finding control through fines); Reich v. Circle C. Invs., Inc., 998 F.2d 324, 327 (5th Cir. 1993) (finding significant control where the employer fined dancers, set minimum prices, promulgated rules concerning dancers' behavior and appearance, and required dancers to be on the floor at opening time); Clincy v. Galardi S. Enters., Inc., 808 F. Supp. 2d 1326, 1344-45 (N.D. Ga. 2011) (finding "significant amount of control over the entertainers" where rules regarding scheduling, imposition of fines or discipline for dancers violation of house rules, conduct regarding dancing on stage, dress, and appearance); Thompson v. Linda and A. Inc., 779 F. Supp. 2d 139, 148 (D.D.C. 2011) (finding control where defendants could punish through fines, impose range of fees per shift, require sign-in and thirty-minute (or more) sets, publish schedules for performances, and enforce certain rules regarding conduct and dancing).

Several issues related to the degree of control exercised by Defendants are undisputed and would favor a finding that Plaintiff was an independent contractor. The parties agree that Plaintiff did not audition or apply for the position, that Defendants did not assign Plaintiff a schedule, and that she was free to come and go as she pleased. Defs. 56.1(a), ¶¶ 5, 8-11. Defendants did not provide Plaintiff any training or instruction; rather she developed her skills on her own. Id. ¶¶ 5, 17. Plaintiff was not precluded from also dancing at other establishments. Id. ¶ 18.

Other undisputed facts, however, favor a finding that Defendants exercised control over Plaintiff, including that the House Mom had to approve a dancer's appearance and makeup and could require her to wear certain items, like pasties. Pl. 56.1(b), ¶¶ 12, 13. The parties also agree that dancers like Plaintiff had to tip the House Mom who in turn paid the Club. Pl. 56.1(b), ¶¶ 2-3, 11.

Certain facts, however, are disputed, and viewed in Plaintiff's favor, preclude a finding as a matter of law that Plaintiff was an independent contractor. The parties dispute whether Plaintiff was required to arrive at the Club by a set time if she wanted to dance on a given night, and whether a penalty would be imposed for late arrivals. Defs. 56.1(a), ¶ 10. They also dispute whether, on nights that she danced, Plaintiff was required to dance on stage at least one set per hour or whether she was required to dance with certain clients at management's direction. Pl. 56.1(b), ¶¶ 8-10. Plaintiff also alleges that Defendants could penalize dancers for poor performance. Finally, Plaintiff alleges that she was terminated, which Defendants dispute. Defs. 56.1(a), ¶ 25.

Based on certain undisputed facts and the disputed facts viewed in Plaintiff's favor, a jury could find that the degree of control that Defendants exercised over Plaintiff established an employee-employer relationship, which would preclude summary judgment in Defendants' favor.

### 2. Opportunity for Profit or Loss and Investment in the Business (Factor Two)

The parties do not dispute that Defendants invested in and maintained the Club, and that Plaintiff did not contribute in any meaningful way to the maintenance of the Club. They also do not dispute that Defendants paid the staff, set the business hours, and marketed the Club to attract clientele. Still, Defendants argue that Plaintiff invested in her own business by buying outfits and marketing herself through her own social media, and that "these investments were critical to Plaintiff's business." Defs. Br. at 14.

In assessing this factor, courts consider the "necessary monetary investments to operate and maintain the establishment." Black, 2022 WL 4229260, at *7; see also Hart, 967 F. Supp. 2d at 919 (finding for plaintiff where the facts "in totality, reflect a far greater investment by [the club] than by the dancers"). Generally, dancers are "'far more closely akin to wage earners

8

toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments.'" Reich v. Circle C. Invs., Inc., 998 F.2d 324, 328 (5th Cir. 1993) (quoting Brock v. Mr. W Fireworks, 814 F.2d 1042, 1051 (5th Cir. 1987)).

First, the Court considers whether Plaintiff's investment in her appearance is akin to the investment an independent contractor might make in her business. See Washington v. Freedom of Expression LLC, No. 21-cv-01318 (PHX)(MTL), 2024 WL 4455483, at *8 (D. Ariz. Oct. 9, 2024) ("Even assuming [p]laintiffs spent thousands of dollars on costumes and makeup to perform at [d]efendants' clubs, that amount would still presumably be less than what [d]efendants spend on advertising, facilities, and maintenance.") (citing Harrell v. Diamond A Ent., 992 F. Supp. 1343, 1350 (M.D. Fla. 1997) (finding a dancer who spent a $1,000 on costumes, $130 a month for hairstyling, $100 a month for make-up, and $65 a month for shoes had only a minor investment compared to the club's operators)). Plaintiff's clothing and makeup purchases are insufficient to establish, as a matter of law, her investment in her business as an independent contractor.

Second, the Court considers Plaintiff's marketing efforts on social media. Courts routinely reject the argument that dancers are investing in their business as an independent contractor through their solicitation of customers based on individual marketing. See Gilbo v. Agment, LLC, 831 F. App'x 772, 777 (6th Cir. 2020) ("Strip club owners often suggest that a dancer's ability to 'hustle' for more customers gives the dancers significant opportunity for profit or loss, but '[t]his argument . . . has been almost universally rejected.'" (quoting McFeeley v. Jackson St. Ent., LLC, 825 F.3d 235, 243 (4th Cir. 2016))). Plaintiff's personal marketing efforts, when viewed in the totality of the Defendants' investments to operate, promote, and maintain the Club, fail to establish, as a matter of law, that Plaintiff operated as an independent contractor.

### 3. Degree of Skill and Independent Initiative Required to Perform the Work (Factor Three)

Defendants argue that "Plaintiff's earnings (i.e. her tips from customers) depended on how well she was able to draw her clients into the club, entertain her clients and choosing which clients she would entertain based on her perception of the amount she could earn from those clients." Defs. Br. at 11. Moreover, her success was "managing her expenses, specifically the amount of money she spent on outfits and makeup," with any amount spent "reduc[ing] the profits earned . . . through tips." Id. Defendants compare Plaintiff to: (1) delivery drivers who varied in the number of hours work and amount of money made, both dependent upon when they began their workday; (2) drivers who must know how to drive, be licensed, navigate routes and maintain safety of passengers, and proactively accept new dispatch calls; and (3) delivery driver who had independent skills of developing relationships with store managers and personnel to grow business. Id. at 10. Plaintiff responds that Defendants comparison to non-exotic dancers is improper and similar comparisons were unsuccessfully made in Hart. There, the court disagreed with defendant's comparisons, holding "[c]ourts have further consistently held that there is limited genuine skill required to be an exotic dancer." 967 F. Supp. 2d at 920 (collecting cases).

To begin with, it is disputed whether Plaintiff exclusively selected her clients. Plaintiff denied that she only selected clients based on who she believed would pay her best. Defs. 56.1(a), ¶ 20. Rather, Plaintiff asserted that she was asked to dance with certain clients at management's direction, though she could have chosen not to dance for them. Pl. 56.1(b), ¶ 8. And the parties seem to agree that the House Mom exercised some control over Plaintiff's appearance, suggesting she did not have full autonomy over her actions. Id. ¶¶ 12, 13.

In any event, while Plaintiff may have attracted clientele through her looks, talent, and self-promotion, "such 'hustling' is not skilled work. And every court to consider such a 'hustling'

argument by a strip-club proprietor has rejected it." Hart, 967 F. Supp. 2d at 920 (citing Clincy, 808 F. Supp. 2d at 1346 n.12); see also Black, 2022 WL 4229260, at *7 ("While it is likely that Plaintiff undertook efforts to find customers, courts have found that such efforts are not considered 'skilled work.'") (citing Hart, 967 F. Supp. 2d at 920).

Considering the disputed evidence regarding how much independence Plaintiff had over her clientele and performance, and the undisputed evidence regarding Defendants' control over Plaintiff's appearance and obligation to tip out the House Mom, evidence that Plaintiff's earnings corresponded to her dancing is insufficient, as a matter of law, to find her an independent contractor. Reich v. Priba Corp., 890 F. Supp. 586, 593 (N.D. Tex. 1995) ("[A]n individual can always improve her chances for greater earnings by using initiative and skill to perform to the best of her ability.").

### 4. Permanence or Duration of the Working Relationship (Factor Four)

Defendants argue that because Plaintiff was able to work at other establishments as a dancer, including during the time she was dancing for Defendants, and because "[i]t was completely up to Plaintiff when and for how long she danced at the Club," she is an independent contractor. Defs. Br. at 11. Plaintiff admits that this factor favors Defendants since dancers, like Plaintiff, could work at other establishments at will. However, Plaintiff urges that it be given "modest weight." Pl. Br. at 9.

Courts to face this factor in the context of exotic dancers often afford it modest weight. For example, in Hart, the court noted:

> [this factor] is entitled to only modest weight in assessing employee status under the FLSA. That dancers were free to work at other clubs or in other lines of work, and that they were not permanent employees, do not distinguish them from countless workers in other areas of endeavor who are undeniably employees under the FLSA—for example, waiters, ushers, and bartenders. Other courts have

11

similarly accorded limited weight to this factor, in comparison with the others considered under the FLSA test.

967 F. Supp. 2d at 921 (collecting cases); see also Black, 2022 WL 4229260, at *7 (finding this factor weighed against finding employee status (with modest weight) where no employment contract and no evidence that plaintiff could not be employed elsewhere); Benitez v. Valentino U.S.A., Inc., No. 19-cv-11463 (JGLC), 2024 WL 1347725, at *7 (S.D.N.Y. Mar. 29, 2024) (holding that despite finding the factor to favor plaintiff classified as an independent contractor, it is only afforded "modest weight" (citing Hart, 967 F. Supp. 2d at 921)).

But, at summary judgment, the court's role is to issue spot, not issue decide. Based on the undisputed evidence, a jury could find that Plaintiff did not exercise total control over the duration and permanence of her relationship with the Club. That said, Plaintiff claims that she was terminated, which Defendants deny. If that fact was proven it would demonstrate a greater degree of control by the Defendants over the permanence and duration of Plaintiff's working relationship.

### 5. Extent to Which the Work is An Integral Part of the Employer's Business (Factor Five)

The parties dispute whether dancers are integral to the Club's business. Defendants assert that "many customers of the Club visit the Club simply to be entertained by the bartenders that work at the Club who provide their clients with their company, engage in pleasantries, as well as provide bottle service," and that "the Club could operate without the services of the dancers." Defs. 56.1(a), ¶¶ 2, 3. Plaintiff points to testimony describing the Club as a "strip club," and the Entertaining License Agreement, which describes the venue as providing "nude and/or semi-nude entertainment to the adult general public." Id.

Considering the evidence in favor of Plaintiff, as the non-moving party, a reasonable jury could find that the Club's dancers were integral to Defendants' adult entertainment business.

12

### 6. Totality of the Circumstances

In addition to the five factors under the economic reality test, a court may consider the "totality of the circumstances." Brock, 840 F.2d at 1059. Based on certain undisputed facts, and weighing the disputed facts in Plaintiff's favor, a reasonable jury could conclude that Plaintiff was Defendants' employee. Accordingly, summary judgment as to the FLSA cause of action is DENIED.

## B. New York Labor Law

Turning to the NYLL, although the inquiry is substantially similar to the economic reality test, the primary emphasis is on the "degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Bynog v. Cipriani Group, Inc., 1 N.Y.3d 193, 198 (2003). The Court considers the five Bynog factors: "whether the worker (1) worked at his/her own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." Id. Though the Court considers these factors, "the critical determinant is the degree to which the purported employer exercises control in fact over the results produced or the means used to obtain them." Edwards v. Publishers Circulation Fulfillment, Inc., 268 F.R.D. 181, 184 (S.D.N.Y. 2010); see also Hart, 967 F. Supp. 2d at 923-24 (collecting cases).

### 1. Worked At Her Own Convenience and Fixed Schedule (Factors One and Five)

Plaintiff and Defendants consider the first and fifth Bynog factors together (convenience and fixed schedule). Courts regularly engage in a similar approach. See also Hart, 967 F. Supp. 2d at 924-25 (considering the first and fifth Bynog factors together).

As discussed above when considering the degree-of-control factor under the FLSA analysis, several facts that should be considered under the first and fifth Bynog factors are

13

undisputed, and a jury could find that they establish Plaintiff as an independent contractor under New York law. It is undisputed that: (1) the Club did not set Plaintiff's schedule, (2) Plaintiff made her own schedule and did not have to tell anyone if she planned to dance, (3) there were no sign-in or sign-out sheets, and (4) Plaintiff could dance at other establishments if she chose. Defs. 56.1(a), ¶¶ 8-12, 18.

But other undisputed facts demonstrate a degree of control over Plaintiff to support a finding that she did not work at her own convenience. For example, it is undisputed that Plaintiff's appearance had to be approved by the House Mom, and that Plaintiff had to tip out the House Mom. Pl. 56.1(b), ¶¶ 11-13. The parties also agree that the Club management had the power to suspend dancers. Id. ¶ 4. Still, other facts are disputed and, when viewed in the light most favorable to Plaintiff, would lead a jury to find that she was an employee. Those facts include whether dancers were penalized for arriving late or poor performance, whether dancers were required to dance a certain number of times in an hour or with certain clients, and whether Plaintiff was terminated. Pl. 56.1(b), ¶¶ 9-10; Defs. 56.1(a), ¶ 25.

Thus, a reasonable jury could conclude, when considering the first and fifth Bynog factors, that Plaintiff was more akin to an employee under New York law.

### 2. Remaining Bynog Factors

The remaining factors are undisputed and, based on those facts, could lead a jury to find that Plaintiff was an independent contractor. It is undisputed that Plaintiff was free to work at other establishments (second factor), did not receive fringe benefits (third factor), and was not on Defendants' payroll (fourth factor). Defs. 56.1(a), ¶¶ 18-19, 21.

### 3. Other Relevant Factors

"New York courts look beyond the five Bynog factors, with control over the means [used to achieve the results being] the more important consideration." Hart, 967 F. Supp. 2d at 926 (internal quotation marks omitted). Because the degree of Defendants' control over Plaintiff is contested, when the evidence is viewed in favor of Plaintiff, as the non-moving party, it supports her claim. Accordingly, summary judgment on her New York Labor Law claim is not warranted.

## CONCLUSION

Defendants' motion for summary judgment is DENIED. The parties shall appear for a telephone conference to set pretrial deadlines on Wednesday, September 10, 2025, at 3:30 p.m. At that time, the parties should call the Court's dedicated teleconferencing line at (855) 244-8681 and enter Access Code 23142707008.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 53.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:    September 3, 2025
          New York, New York